Scribner, J.
On April 23, 1892, plaintiff in error brought an action in ejectment in the corut of common pleas of Lucas county to recover from the city of Toledo so much of the eastern one-half of Sixteenth street, so-called, *818 as lies between Jefferson street and Monroe street, and as extends from Monroe street on the south a distance of about 200 feet towards Jefferson street on the north. The city was then engaged in improving that part of the street by grading, and the defendant, McMahon, was a contractor employed upon that work. The portion so claimed was thirty-three feet in width. The plaintiff in her petition alleged that she was the owner of the strip of land above described, and that the city unlawfully kept her out of possession, and prayed judgment in the usual form.
The city in its answer denied the averments of the petition, and by amendment to its answer filed, set up certain facts which will be noticed further on.
The plaintiff in her reply set up certain matters claimed to operate as in estoppel.
In the common pleas the case was tried to the court, a jury having been waived. Much evidence was submitted by the parties, a large portion of which was documentary in its character. Many exceptions were taken during the trial, which are preserved in the record. Judgment was rendered in favor of the city. A motion for a new trial was filed and overruled. A bill of exceptions embodying all the testimony was taken, and forms a part of the record, and the case is now before us upon the petition in error filed by the plaintiff, for the purpose of reversing the judgment of the court of common pleas.
All questions arising upon this record, both of fact and of law, have heretofore been considered by us, and, in the main, determined after full and very laborious examination, not only of the facts but of numerous authorities bearing upon the legal propositions involved. For a full statement of the matters in issue, both of fact and of law, we refer to Daiber v. Scott, 3 C. C. 313, and to the opinion of the court delivered by the presiding judge in the case of Reynolds v. Newton, 14 C. C. 433. In those cases, however, the city of Toledo was not a party. The litigation was between property owners of property abutting on Sixteenth street, some of it abutting upon that part of the street lying between Madison and Jefferson streets, and some of it upon that part of the street lying_ between Jefferson and Monroe streets — in that part of the street here in question — and it is claimed by the plaintiff in error that as to two, at least, of the questions arising here no conclusion has been reached or adjudication had by this court. We shall confine ourselves in this opinion to the two questions so presented.
On of these quesions arises upon certain proceedings had in the court of common picas and district court of Lucas county, particularly set forth in the answer, which, it is said, as between these parties and as against the city of Toledo, are res adjudicata of the vital question to be determined here, and estop the city, so far as the plaintiff in error is concerned, from asserting a claim to that part of the land here in controversy for street purposes. A copy of the record and proceedings relied upon by plaintiff in error is attached to the bill of exceptions, and is entitled “James W. Myers and Sarah M. Myers, by their next friend Thomas L. Walker, plaintiffs, v. The City of Toledo, defendant.” It is averred in the petition here among other things, as follows:
“The plaintiffs say, that during the year 1837, and thereafter until the year 1846, the southeast fractional quarter of section No. 35 in town-shop No. 9, south of range No. 7 east, in the county of Lucas and state of Ohio, was owned by the following parties, as tenants in common, and in the following proportions, to-wit: James Myers, the ancestor of the plaintiffs, four-sixteenths, Hiram Pratt an dWilliam F. P. Taylor, one-sixteenths, Henry W. Hicks, seven-sixteenths, Thomas., H. Hubbard, two-sixteenths, and A. J. Underhill, two-sixteenths.
*819 “Said premises are situated within the corporate limits of the city of Toledo, as the same existed in the year 1837. .
. “The boundaries of the city, at that time, included within its limits several tracts of land, some of which have been platted by their respective owners and laid out into lots, blocks and streets, and some of which had not.
“The town plats were known as Port Lawrence, and Vistula, and the plats were each made independently of the other, and without continuous streets and alleys.
“The above named, Pratt, Taylor and Hicks were owners in both Port Lawrence and Vistula, and said James Myers wa one of the owners of Port Lawrence.
“During the year 1837, the owners of Port Lawrence and Vistula, which were located on contiguous lands, but not united in the plats, de-' termined to re-plat their land — extend the plats over a larger extent of territory than had been platted, and bring the two plats together, in such manner as to produce continuous streets, lanes, and alleys, and make their property, in other respects, more convenient for sale and occupation, as part of the same municipal organization.
“For this purpose, Robert Gower was employed as a surveyor, and duly deputized for the purpose by the then acting county surveyor of the county of Lucas.
“While said Gower was surveying and platting the grounds on _ which the Port Lawrence and Vistula divisions of the city were laid off, ""said James Myers, Hicks, Pratt and Taylor directed him to survey, lay off and plat into lots, blocks and streets said southeast quarter of said section 35, in such manner as to have the same conform to the plats of the other portions of the city, which he was then surveying and platting.”
. They proceeded to aver then that Hubbard and Underhill, two of the owners of the quarter section, did not unite, but that the surveyor proceeded to survey and plat the premises; <and they extended the streets laid down upon the other portions of the city through ,and over the southeast quarter of sec. 35.
“Among the streets so laid down upon said plat of the city and extended, through the said southeast quarter, was Fourteenth street, so called.”
This plat,'they proceed to aver, was signed by all these parties, acknowledged, and duly recorded by all, except Hubbard and Underhill; that these parties did not and would .not, although requested so to do, sign and acknowledge the plat, or ratify it. Then the petition avers that after all this had been done, the owners of the property united in proceedings for partition, under the statute, and the partition was made; and in making this, it is averred that “reference was had to said map, and ' plat and the lots and blocks, as laid down and numbered, were set off by numbers to the respective owners.” And they further aver that Hubbard and Underhill refused to ratify this; and the result was that in February, 1845, there was a petition for partition;-and a partition was had in a proceeding in the court of common pleas of Lucas county; and that all the parties were brought into that partition, and it was duly ratified by the court. Then they proceed to say “that there was set off to said James Myers, by partition made and confirmed at the July term, A. D. 1846, of said court, the following premises, part of said southeast quarter, to-wit: “Now, here is a description as taken from the partition, which it is averred was accepted by Myers as well as all the other parties:
“That there was set off to said James Myers, by partition made and confirmed at the July term, A. D. 1846, of said court, the following premises, part of said southeast quarter, to-wit: Beginning at the south *820 easterly corner of said quarter section and running thence westerly along the south line of said quarter section to its intersection with the center line of Monroe stree, according to the map or survey of said city as made by Robert Gower, surveyor, and then on file in the recorder’s office of said county aforesaid, to its intersection with the center 'line of Sixteenth street, as laid down upon said map; thence northeasterly along the center line of said Sixteenth street, to a point where the same would be intersected by a southeasterly prolongation of the dividing line between lots 40 and 41, as also laid down upon said map; thence northwesterly along said dividing line, to a point where its prolongation, would intersect the center line of Seventeenth street, as laid down upon said map; thence northeasterly along the center line of said Seventeenth street, to its intersection with the center line of Jefferson street, as laid down upon said map; thence southeasterly along the center line of said Jefferson street to its intersection with the east line of said section; thence southerly along said east line to the place of beginning, including lots (and he enumerates a great many lots) as laid down upon said plat.
“Fourteenth street, as laid down upon said plat of said quart.er section, passes through and across said premises so set off and assigned to said James Myers in said partition, as does also Fifteenth street.
“Said Fourteenth street has never been opened to public use, and has never been taken, possession of by the city, but said James Myers took possession of all the premises set off to him in said partition, including said Fourteenth and 'Fifteenth streets, immediately after said partition was perfected, and remained in the continued, open and notorious possession thereof, claiming title thereto up to the time of his death, as hereinafter stated.
‘‘The defendant has never since said platting was made, set up any claim or title to or interest in said Fourteenth and Fifteenth streets, until within a comparatively short time, and has never until recently asserted or maintained that said plat of said quarter section was valid to pass title to said streets, or any part thereof.”
Then the pleader proceeds to aver that said James Myers died about the month of July, 1864, leaving a last will and testament, by which certain of these premises, including the territory, embraced within the lines of Fourteenth and Fifteenth streets as appeared on this map, were devised to the plaintiffs. It avers that the city claims the riglrt to proceed to open Fourteenth street, and prays judgment enjoining them from such action.
The city answers, claiming in substance that it was entitled to open the street; that it had been dedicated to the city by virtue of the proceedings referred to in the petition; and that James Myers had repeatedly ratified said dedication by his acts; and it denies all claim of the plaintiffs.
The plaintiffs replied, denying that Myers had in any manner ratified the alleged dedication.
The case was heard in the common pleas, and a decree then rendered, granting in part the petition of th plaintiffs, and it was appealed to the district court, where this judgment was rendered:
“This cause came on to be heard upon the petition of- the plaintiffs, the answer of the defendant, and the reply of the plaintiffs thereto, and the testimony, and the court being now advised in the premises, find that all and singular the statements set forth in the petition and reply of the plaintiffs are true, and the statements of the defendant in the answer conrary thereto are untrue.
“On consideration whereof it is ordered, adjudged, and decreed that said defendant be, and it is hereby enjoined and restrained- from entering upon the premises in the petition set forth to open said Fourteenth street *821 through said premises, and that the plaintiff recover of the defendant their costs in this behalf expended taxed- at,' and that execution issue.”
Do these proceedings constitute an estoppel in the present action? Let it be remembered that the action to enjoin the city from opening Fourteenth street was commenced by the devisees of James Myers after his death, and after the lapse of about twenty years after the partition of the fractional quarter, fully stated in the record, had been made. During all that period, as shown in this record, in the opinion of the court before referred to, he had on many occasions, in many conveyances, fully recognized what is known as the Gower map. It does not appear that he ever repudiated it. In the petition for an injunction before referred to, the devisees, the son and daughter, allege, not only the imperfection in the plat, but also that the city had lost its right by non-user. Both grounds were relied upon to defeat the claim made by the city. The decree of the district court finds generally for the plaintiffs therein, without passing specifically upon either ground insisted upon. The statements of the petition relate mainly to Fourteenth street. The complaint is that the city threatens to enter Upon the premises and open what it claims to be Fourteenth street. Fifteenth street is also mentioned; but no complaint is made in respect to Sixteenth street, the street here in controversy; indeed, it appears to us that the allegations and recitals of the petition, by implication, at least, recognize the existence of Sixteenth street as shown upon the plat.
Now, bearing upon the effect of this decree, I refer to a paragraph 'or Jwo contained in the opinion delivered by Judge Bentley in our proceedings in this court in disposing of the case of Reynolds v. Newton, supra. He says:
“We come now to the other question which was not involved in the former case of Daiber v. Scott, supra; and that is, the effect of this record in the case brought by James W. Myers and his sister against the city of Toledo to enjoin it from opening Fourteenth street. That action was brought in ISO'S, it would seem, and resulted in a finding and decree in favor of Mr. Myers and his sister. There was no person made a party defendant to that proceeding, except the city of Toledo. The only thing sought by it was to enjoin the city of Toledo from opening Fourteenth street, and while in the description of the land which they claim to own in their petition they describe it as including that part of Sixteenth street here in question, yet we apprehend that in no event could an estoppel arise from that case to any person to any extent further than as regards the particular piece of land then in question, to-wit: That which was included in Fourteenth street so-called. We doubt very much whether that record would even estop the city as to any other street except Fourteenth street, notwithsanding the averments in the petition, which, in general terms, the court perhaps found to be true. We think that estoppel would not apply here, even if this plaintiff had made out his case, by virtue of the right which the city might have to open Sixteenth street; but we think the plaintiff is not necessarily driven to that; that is, that circumstances might exist which would estop the city of Toledo from opening and claiming it as a public street, which would not estop the private owners of any of the lots in that addition.
“As briefly referring to this point which I am now considering, I will call attention to Segar v. Harrison, 25 O. S., 14, and will read a little from the opinion of the court on page 20. • After reciting a contract between the parties in the case, whereby a certain street should be dedicated or opened, and in reference to which a fence had been made by them, the court say: “Under these circumstances, it seems to us, in the absence of fraud or mistake, the agreement sought, upon well established *822 principles of equity, to be enforced, whether the public authorities accept the street as dedicated to public use or not. When the street is opened, the public will have the right to use it, and the proprietors who are parties to the agreement for its establishment, have the right to insist upon affording the public the opportunity of using it.”
In support of the ,doctrine there spoken of the court allude to Child v. Chapel, Seldon, 257. Judge Morris says in the course of his opinion: “Where an owner of land lays out in lots an streets, and exhibits the streets upon a map b ywhich he sells and conveys lots so laid out, as between him and the purchasers of such lots, the spaces so laid down upon the map as streets are dedicated as such to the public use. This I understand to be the law, and in conformity to the principles of natural justice. The mere act of selling and conveying by such map binds the grantor to permit the land so laid down as streets to be used as such. As between the parties, their heirs and assigns, it fixes the servitude of a public way upon the land thus laid out as streets. It is perhaps unnecessary now to consider whether such a grant as between the grantor and the public would be a dedication. I think it would not.”
Now, Judge Bentley supplements this quotation by this language:
“By this dedication and recognition of the Gower map and the streets, etc., laid down upon it, and the conveying of property with refenence to it, we think Mr. Myers and grantees have shown as plainly as could be by deed that they were bound to regard this Sixteenth street as a public street in the village, and that whenever they should convey lots bounding and abutting upon it their grantees would have the right to insist as against them, and all those bound by their acts, that this was in fact a public street, and that the public would have the right to use it whether or not the public had accepted it, or opened it, or improved it.”
Now, according to these views and the opinion expressed by the supreme court in the case cited by Judge Bentley as to the rights of property owners in a case like the present, and the decision made by the district court,'even if under the circumstances it might operate as an estoppel against the city, it can have no such effect here. It cannot and does not conclude the owners of the property abutting upon the street. They have the right to the full and undisturbed use of the street. They may grade, pave, and light it, construct sewers and lay water pipes in it, and, as shown in the authority before referred to — the opinion of the court in the case of Segar v. Harrison, 25 O. S., 14 — they may avail themselves of the agency of the city to accomplish these purposes; and, with the exercise of these rights the plaintiff cannot, certainly by a proceeding in ejectment, be permitted to interfere.
We are referred to Longworth v. Cincinnati, 48 O. S., 637, which it is claimed has an important bearing upon this question. There the municipality had, according to the claim of plaintiff, taken possession of his_ lands and opened them up for street purposes. This, as it was claimed, had been done arbitrarily, without proceedings to appropriate or make compensation for the property taken. The plaintiff tendered a deed, to be delivered upon payment of the value of the land taken, but prayed judgment for the value of the land, and for general relief in the event that the city refused to accept the deed. The court went carefully over the questions presented, and determined that the action might be maintained. In that case it will be observed the controversy was between the property owner and the city. In the case now under consideration the substantial controversy is between the owners of property abutting upon the street, including the plaintiff in the action. The city is engaged in discharging a duty which it owes to these property owners, as already shown. The plaintiff can no more interfere with the city in *823 the performance of this duty than she could interfere with the work of improvement if it were being carried on directly by the property owners themselves. .
Hamilton & Kirby, for Plaintiff in Error.
C. F. Watts, for Defendant in Error.
. There is a case touching the question of the effect of laying off streets and making a dedication of land reported in Wisby v. Bonte, 19 O. S., 238. And in the opinion cited in the case of The City of Toledo v. The Lake Shore & Michigan Southern Railway Co., commonly known as the Broadway Bridge case, we find a paragraph reading in. these words:
“It is claimed upon the part of the railroad company that the intention of the owners to dedicate this street is not sufficiently evidenced by this plat. Cousel sought to distinguish this case from one reported in Wisby v. Bonte, 19 O. S., 238, because in the latter case the report of the commissioners in partition had said in. so many words that the streets and alleys designated on the plat which they returned were ‘hereby forever dedicated to public purposes,’ or words to that effect; but in- the present case there were no such words of dedication, and nothing to indicate a dedication, except the showing of the projected street upon the map, and the name written or printed upon it. We are unable to conclude that as far as the proprietors are concerned, this makes really any substantial difference in the rules to be applied to the two cases. We are clearly of the opinion that those circumstances evince a willingness and an intention upon the part of the proprietors, so far as they were concerned, to dedicate such a street, substantially as laid down upon this partition plat. All the acts which had been done theretofore, all the acts which accompanied this and followed if from that time, would seem to be in line with this idea; that they were willing that this piece of land should be thus used for a public street, and that they intended that it should be dedicated to the public for that-purpose. We think the railroad company was fairly charged with notice of that fact, and notice and knowledge of those circumstances and the intent of the proprietors.”
A further claim is made in this case that by levying assessments and taxes and collecting them, and instituting proceedings to condemn, under the terms of the injunction case, as was done by the city, estops the city, although it might not estop the property owners. This court held in Darber v. Scott, supra, and in the case of Reynolds v. Newton, supra, that no such estoppel applied. Says the presiding judge in Reynolds v. Newton:
-“We further hold that the city of .Toledo by proper and sufficient action accepted said dedication, many years since, and that neither by causing said Sixteenth street to be taxed or assessed for improvements, nor by instituting proceedings to condemn Jt for street purposes, did the city estop even itself from claiming that it was and is a public street. Such assessments were authorized, and the parties who paid them-were in no wise compelled to do so, and by voluntarily paving them they took their chances of any subsequent assertion that said Sixteenth street was a public street.”
This substantially disposes of all the questions that are submitted toils in this proceeding; and it results from the views expressed that there is no error in the record,, and that the judgment of the court of common pleas must be affirmed; and it is so ordered.